IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:18-cr-00189 |
| | ) | JUDGE RICHARDSON |
| ROBERT RUCKER | ) | |

# MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Robert Rucker's Motion for Temporary Bereavement Release (Doc. No. 50 "Motion"), to which the Government has responded in opposition in relatively cursory fashion, perhaps due to the Court's necessarily stingy deadline for filing a response. (Doc. No. 52).

Defendant has pled guilty, pursuant to a plea agreement, to Count Two of the Indictment, charging possession of a firearm subsequent to a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924. In the plea agreement, the parties noted their agreement that Defendant qualifies for enhanced punishment as an Armed Career Criminal pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e), which carries a mandatory minimum sentence of 15 years (180 months). (Doc. No. 48 at 2, 6). Sentencing is currently set for July 24, 2020. The parties have jointly recommended a sentence of 180 months, the minimum possible sentence under 18 U.S.C. 924(e).

According to the Motion, and to news reporting the Court has reviewed, Rhonda Rucker died tragically in a dreadful automobile accident, at which she was entirely not at fault. To make matters worse, if such were even possible, Ms. Rucker was (according to the Motion) at the time returning from the funeral of a family member (through marriage), namely, the brother of the wife of Defendant. The Motion identifies Rhonda Rucker as Defendant's aunt—Defendant's mother's

older sister—and states that she helped raise Defendant and has a close relationship with him. (Doc. No. 50 at 1).

Via the Motion, Defendant seeks temporary release to attend Ms. Rucker's funeral, which he represents will occur on June 8, 2020. He asks to be released into the custody of one of three persons (his wife, his aunt, or his uncle), who can pick Defendant "up from either the Marshal's Office at the United States Courthouse in Nashville, or from the Warren County Detention Center in Bowling Green, Kentucky, where Mr. Rucker is currently detained [and then] return Mr. Rucker to the courthouse or the jail after the funeral is over." (Doc. No. 50 at 2).

For the reasons set forth below, the Motion will be denied.

## ANALYSIS

Defendant first claims that temporary release (or "furlough") for bereavement purposes can (and should) be ordered by this Court pursuant to its "inherent authority of the governance of its criminal cases." (Doc. No. 50 at 3). However, he cites no authority to support the proposition that this Court has "inherent authority" to grant furlough for bereavement purposes. Still less does he cite authority for the proposition that the exercise of any such authority would be appropriate under the facts of the present case. Perhaps sensing the lack of support for the existence of such "inherent authority," he next turns to what is in fact the applicable standard, *i.e.*, 18 U.S.C. § 3143. He claims that if the Court concludes that the Motion

> is governed by § 3143, then it would still have authority to order release under 18 U.S.C. § 3145(c), which permits release of a defendant whose detention is otherwise mandated under § 3143, when a judicial officer finds that the defendant has made a showing of exceptional circumstances. *United States v. Christman*, 2010 U.S. App. LEXIS 4525 (6th Cir. 2010).

(Doc. No. 50 at 3).

As indicated, 18 U.S.C. § 3143(a) indeed provides the applicable standard. In particular, "[o]nce convicted upon his guilty plea, Defendant's detention was governed by 18 U.S.C. § 3143(a), which applies to defendants who have been found guilty and are awaiting sentencing." *United States v. West*, No. 1:18-CR-00002, 2020 WL 2572482, at *2 (M.D. Tenn. May 21, 2020). In *West*, this Court discussed that subsection (*i.e.*, Section 3143(a)), both generally and as it applied in the particular circumstances of the defendant in *West*:

> That subsection has two paragraphs. Paragraph (1) applies generally, irrespective of the charges involved, and paragraph (2) is applicable only to cases involving particular specified charges, including charges falling within Section 3142(f)(1)(A)-(C). The idea seems clear: paragraph (2) relates to more serious charges (compared to a garden-variety charge) and thus requires more for the release of a defendant convicted of any such charge. More specifically, subsection (a) of Section 3143 provides, in pertinent part: in paragraph (1) that detention is mandatory unless the defendant can show by clear and convincing evidence that he is not a flight risk or danger to others; and in paragraph (2) that for a defendant convicted of a crime falling within Section 3142(f)(1)(A)-(C), detention is mandatory even if he can make the required showing by clear and convincing evidence that he is not a flight risk or danger to others, *unless there is a substantial likelihood that a motion for acquittal or new trial will be granted or an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person*.
>
> As noted above, Defendant has been convicted of two crimes falling within Section 3142(f)(1)(C). This means that his case is now governed by paragraph (2) of Section 3143(a). For Defendant to be released under that paragraph, as noted, (A) he would have to show by clear and convincing evidence that he is not a flight risk or a danger to others; *and* (B) there would have to be a substantial likelihood that a motion for acquittal or new trial will be granted or a prosecutorial recommendation that no sentence of imprisonment be imposed on the defendant. The latter is typically an enormous hurdle for a defendant seeking release, especially one who has pled guilty; after all, in the case of a guilty plea to the kind of serious charge covered by Section 3142(f)(1)(A)-(C), there is typically both a very small likelihood that a motion for acquittal or new trial will be granted and an absence of a prosecutorial recommendation of no imprisonment. It would seem, then, that for defendants subject to paragraph (2), release pending sentencing typically is virtually out of the question even if they are demonstrably neither a flight risk or danger to others.

*Id.* at *2-3 (emphasis in original).[1] Unlike in *West*, in Defendant's case, detention pending sentencing is governed by paragraph (1), rather than paragraph (2), of Section 3143(a) because his offense of conviction does not fall within Section 3142(f)(1)(A)-(C). This means that the requirement set forth above in italics—*i.e.,* that there is a substantial likelihood that a motion for acquittal or new trial will be granted or an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person—is simply inapplicable. And it is only this requirement that is affected by 18 U.S.C. § 3145(c);[2] this vital requirement can be disregarded based on "extraordinary reasons." *Id.* *4-6 (discussing, *inter alia*, *United States v. Christman*, 596 F.3d 870 (6th Cir. 2010)). This is a major benefit for defendants seeking release who are subject to this requirement, which, as noted above, is generally very daunting.

But Section 3145(c) does not otherwise aid defendants seeking release pending sentencing. In particular, it does not apply to defendants (like Defendant) who are subject to detention under section 3143(a)(1), because "Section 3145(c) applies to (and only to) a defendant 'subject to detention pursuant to section 3143(a)(2) or (b)(2).'" *Id.* at *6 (quoting 18 U.S.C. § 3145(c)). And in particular, whether a defendant is subject to paragraph (1) or paragraph (2) of Section 3143(a), the defendant still must be able to show that he is not a flight risk or danger to others. Section

---

[1] The Court uses the phrase "not a flight risk or danger to others" as shorthand for "not likely to flee or pose a danger to the safety of any other person and the community if released . . . " 18 U.S.C. § 3143(a).

[2] This subsection of Section 3145 provides:

> Appeal from a release or detention order.--An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c).

3145(c) does nothing to change this; even for those defendants to whom it applies—*i.e.,* those subject to detention pursuant to Section 3143(a)(2)—release is available only if the defendant can "meet[ ] the conditions of release set forth in Section 3143(a)(1) or (b)(1)." 18 U.S.C. § 3145(c). Section 3143(a)(1),[3] as noted, requires a defendant seeking release to show by clear and convincing evidence that he is not a flight risk or danger to others.

Even assuming *arguendo* that the Defendant's prospective attendance at his aunt's funeral constitutes "exceptional reasons" for Defendant's release,[4] the Motion thus must be denied unless Defendant can make this showing. And although the Court takes no joy in saying so, or in denying Defendant an opportunity to attend his aunt's funeral, Defendant simply does not come close to meeting his burden. The closest Defendant comes to an attempt to meet his burden is his proffering of three third-party custodians.[5] A conscientious and physically and mentally competent third-party custodian can help reduce the risk of flight or danger to the community. But here, the Court is: (a) not in a good position to assess the suitability of these third party custodians, especially given the lack of information provided about them and the Court's inability to reasonably verify any proffered information about them anyway at this late juncture; and (b) their third-party custodianship alone would be inadequate in any event, no matter how suitable they may be as custodians, to enable Defendant to meet his burden. Defendant simply cannot make the required showing to any substantial degree, let alone by clear and convincing evidence, given (a) the

---

[3] Section (b)(1) of Section 3143 is inapplicable here because it applies only to release (after sentencing) pending appeal. *See* 18 U.S.C. § 3143(b)(1).

[4] The Court need not and thus does not decide whether in fact this constitutes "exceptional reasons." This is not to say that the Court fails to easily conclude that the death of Ms. Rucker is tragic and that there are exceptional reasons for those close to her to attend the funeral and do much more in an attempt to find solace.

[5] And it is understandable that Defendant's attempt to make this showing was half-hearted at best; Defendant would have a very steep uphill battle in this regard.

information in the Pretrial Services Report, and (b) Defendant's major incentive to flee due to the lengthy mandatory minimum sentence he is facing. (Doc. No. 524 at 2, 4).

Regarding the latter, the Court does not presume that Defendant would necessarily be so callous as to use his aunt's funeral as an opportunity to flee; it does not make that judgment about Defendant's character. The Court merely notes that Defendant has a substantial incentive to do so, and that release would give him an opportunity to do so as long as he merely is able to literally physically outrun his third-party custodian and anyone informally assisting the third-party custodian. Finally, the Court cannot ignore the possibility that if (as the Court does not dispute) he is devastated by his aunt's death, his grief may naturally impair the soundness of his decision making, perhaps leading him to make poor, risky or self-detrimental choices while on release.

Regarding the former, the Pretrial Services Report reflects a very lengthy, continuous and seemingly unbroken history of criminal convictions, many violent or otherwise serious in nature. This includes multiple convictions for aggravated assault and one for evading arrest by motor vehicle with a risk of injury. Moreover, by the undersigned's count, Defendant has had his probation revoked ten times, including once less than a year before he was detained (continuously) in this case. When a defendant has this record, he simply lacks the capital regarding compliance with the law and conditions of release he needs to metaphorically exchange with the Court in return for a furlough. The Court is sympathetic to Defendant and his family under these terribly unfortunate circumstances, but on this record there is no possibility that the Court could find by clear and convincing evidence that Defendant is not a flight risk or danger to others.

## CONCLUSION

To say the least, the Court understands why the Motion was made in good faith. But there is absolutely no question that the Court cannot do what it needs to do for Defendant to receive the

requested furlough: find by clear and convincing evidence that Defendant is "not likely to flee or pose a danger to the safety of any other person or the community if released[.]" 18 U.S.C. § 3143(a)(1). Accordingly, his Motion (Doc. No. 50) is hereby **DENIED**.

    IT IS SO ORDERED.

                                                      *Eli Richardson*
                                                      ELI RICHARDSON
                                                      UNITED STATES DISTRICT JUDGE